**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-2721-WJM-KMT

CARLA LAYS, and
ROBERT LAYS,

      Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, and
AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN,

      Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

      Plaintiffs Carla and Robert Lays (the "Lays") have brought claims of common law bad faith and statutory bad faith (Colo. Rev. Stat. § 10-3-1115) against Defendants American Family Mutual Insurance Company and American Standard Insurance Company of Wisconsin (together, "American Family").  (ECF No. 2.)  American Family moves for summary judgment on those claims.  (ECF No. 4.)  For the reasons stated below, the Court will grant American Family's motion and order the parties to confer with Magistrate Judge Kathleen M. Tafoya to file an Amended Final Pretrial Order that properly addresses the Lays' sole remaining claim (a claim for violation of the Colorado Consumer Protection Act).

## I.  LEGAL STANDARD

      Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

When, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden on a motion for summary judgment by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted). If the movant meets this burden, the burden shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (internal quotation marks omitted).

2

## II.  FACTUAL AND PROCEDURAL HISTORY

The parties do not dispute the following facts.

### A.     The Lays' UM Claim

The Lays allege they were injured in a February 2008 auto accident. (Defendants' Facts ¶ 1; Plaintiffs' Response ¶ 1.)[1]  The Lays' auto insurance policy, issued by American Family, provided uninsured motorist ("UM") benefits of up to $100,000 per person or $300,000 per accident.  (Defendants' Facts ¶¶ 2–3; Plaintiffs' Response ¶¶ 2–3.)

Robert Lays demanded $150,000 in UM benefits for his injuries, which he admits was in excess of his policy limits.  (Defendants' Facts ¶¶ 5–7; Plaintiffs' Response ¶¶ 5–7.)  American Family countered with an offer of $30,120.  (Defendants' Facts ¶ 9; Plaintiffs' Response ¶ 9.)  Carla Lays demanded $75,000 in UM benefits for her injuries.  (Defendants' Facts ¶ 4; Plaintiffs' Response ¶ 4.)  American Family countered with an offer of $13,600.  (Defendants' Facts ¶ 8; Plaintiffs' Response ¶ 8.)

### B.     The Lays' State-Court Lawsuit

Negotiations between the Lays and American Family eventually broke down and the Lays filed a lawsuit against American Family in Colorado Springs (El Paso County District Court) on February 4, 2010.  (Defendants' Facts ¶¶ 10–11; Plaintiffs' Response ¶¶ 10–11.)  The Lays' complaint alleged breach of contract for failure to pay the requested benefits; the Lays did not allege bad faith.  (Defendants' Facts ¶¶ 12–13; Plaintiffs' Response ¶¶ 12–13.)

---

[1] "Defendants' Facts" means "Movant's Statement of Material Facts" (ECF No. 4 at 2–5). "Plaintiffs' Response" means "Response to Movant's Material Facts" (ECF No. 5 at 4–6).

John Scherling, an American Family in-house attorney, represented American

Family in the Colorado Springs lawsuit.  (Defendants' Facts ¶ 14; Plaintiffs' Response

¶ 14.)  On September 16, 2010, Scherling sent a letter to the Lays' counsel which reads

in relevant part as follows:

> I note that no mediation has been set in this case.  Please
> be advised that we are proceeding with IMEs of your clients
> [*i.e.*, independent medical examinations under Colorado
> Rule of Civil Procedure 35].  That office will be in touch with
> your office shortly.  Of course, the money we spend on IMEs
> will not be available as settlement proceeds, if any, for your
> clients.

(ECF No. 4-5 at 1; *see also* Defendants' Facts ¶ 15; Plaintiffs' Response ¶ 15.)

On November 5, 2010, the Lays moved for leave to amend their complaint in the

Colorado Springs lawsuit.  (ECF No. 5-1.)  Specifically, the Lays wanted to add a bad

faith claim based on Scherling's September 2010 letter, which they characterized as

follows:

> . . . Mr. Scherling . . . states that any money paid for the cost
> of an independent medical examination would be deducted
> from the amounts both plaintiffs would be owing [*sic*] under
> their claim for uninsured motorist benefits.  The plaintiffs
> contend that by subtracting costs incurred from uninsured
> motorist benefits, the Defendant and its employees are
> acting in an outrageous manner.  This conduct constitutes
> bad faith . . . .

(ECF No. 5-1 ¶ 5.)

American Family opposed the Lays' motion, arguing that it created "an entirely

new case."  (ECF No. 5-3 at 1–2.)  The court agreed:

> [T]his is a new dispute regarding a September 16, 2010
> communication.  Admittedly this is the same insurance
> contract.  However, the court sees that as [a] new claim
> arising out of a separate transaction from the events that are

4

set for trial February 7, 2011.

(ECF No. 5-2 at 1.)  The court therefore denied the Lays' motion to amend.  (*Id.*)

## C.      The Settlement

The Lays settled with American Family in January 2011 for $75,000 ($25,000 to Carla and $50,000 to Robert).  (Defendants' Facts ¶ 22; Plaintiffs' Response ¶ 22.) That settlement, however, covered only their breach-of-contract claim, and "specifically exclude[d] any other claims [the Lays] have or may have against American Family, including but not limited to any claim for breach of the duty of good faith and fair dealing . . . ."  (ECF No. 4-6 at 1.)

The day after the settlement, the court issued an order dismissing the Lays' case with prejudice.  (Defendants' Facts ¶ 23; Plaintiffs' Response ¶ 23.)

## D.      The Lays' Lawsuit in this Court

In May 2011, the Lays joined (as named plaintiffs) a putative class action filed in this Court.  (*See* Case No. 11-cv-1096-WJM-KMT ("11-cv-1096"), ECF No. 11.)  This Court has since denied class certification and split that original action into three separate actions.  (*See* 11-cv-1096, ECF Nos. 310, 357, 362, 367.)  According to the currently operative complaint, the Lays allege bad faith against American Family based on Scherling's September 2010 letter: "The American Family employee/lawyer, John Scherling, sent a letter to Mr. and Mrs. Lays informing them that any money paid by American Family for the IME's [*sic*] of Mr. and Mrs. Lays would be deducted from the Lays' available UM/UIM policy benefits."  (ECF No. 2 ¶ 34.)

5

# III.  ANALYSIS

American Family argues that it is entitled to judgment as a matter of law on the Lays' causes of action for statutory bad faith and common law bad faith.  (ECF No. 4 at 6–15.)  Specifically, American Family argues: (a) all claims arising before February 4, 2010 are barred by the doctrine of claim preclusion; (b) the Lays' statutory bad faith claim is time-barred; (c) Scherling's September 2010 letter cannot be the basis of a bad faith claim, either common law or statutory; and (d) the Lays have failed to show that American Family's alleged bad faith caused them damages.  (*See id*.)  The Court will address each argument in turn.[2]

## A.    Claim Preclusion

American Family first argues that all claims arising from the Lays' February 2008 accident, and arising before February 4, 2010 (the date the Lays sued in Colorado Springs), are now barred by claim preclusion because the Lays should have brought any such claim in the Colorado Springs lawsuit, which has now been dismissed.  (ECF No. 4 at 6–9.)

---

[2] Summary judgment briefing took place in the middle of a discovery dispute over the scope of the attorney-client privilege asserted at Scherling's deposition.  (*See* 11-cv-1096, ECF Nos. 346, 352, 354.)  The Lays' response brief therefore contained a Rule 56(d) request to deny or delay ruling on summary judgment until the Lays could re-depose Scherling.  (ECF No. 5 at 21–22.)  Soon after the close of summary judgment briefing, Judge Tafoya resolved the discovery dispute and the parties then discussed a new deposition date for Scherling.  (*See* 11-cv-1096, ECF No. 356.)  The record does not reflect whether that deposition ever took place, nor has any party submitted supplemental evidence in light of the additional discovery Judge Tafoya allowed.  On March 27, 2015, the Court issued a minute entry stating that it would treat the Rule 56(d) request as moot unless otherwise informed by the parties by March 31, 2015.  (ECF No. 15.)  No party filed anything by that date.  The Court therefore deems the Rule 56(d) request moot.

It is not clear whether the Lays actually assert any claims based on conduct that predated February 4, 2010.  The only allegation in the complaint that arguably points in this direction is a passing mention in a subordinate clause:

> *After American Family's unreasonable refusal to pay the benefits owed under their UM/UIM policies*, Mr. and Mrs. Lays brought a lawsuit against American family [in Colorado Springs], [at] which point, on information and belief, their respective claim files were "shipped to legal" where an attorney employed in-house by American Family assumed control over the file.

(ECF No. 2 ¶ 33 (emphasis added).)  The Lays' complaint does not develop the allegedly unreasonable refusal to pay benefits mentioned here, but instead immediately goes on to make allegations about Scherling's September 2010 letter.  (*Id*. ¶ 34.) Moreover, the Lays' response to American Family's summary judgment motion does not specify any allegedly wrongful conduct other than Scherling's September 2010 letter.  (*See* ECF No. 5 at 8–23.)

The Court notes, however, that the Lays' allegations in the final pretrial order include allegations based on actions that predated February 4, 2010.  (*See* ECF No. 8 at 6–7.)  The Court will therefore address American Family's claim preclusion argument.

American Family discusses the claim preclusion question mostly with reference to federal law.  (*See id*. at 8.)  However, because a Colorado state court proceeding is at issue, 28 U.S.C. § 1738 requires this Court to give it "the same full faith and credit" it would receive "in the courts of [Colorado]."

In Colorado, "claim preclusion bars relitigation not only of all claims actually decided, but of all claims that might have been decided if the claims are tied by the

7

same injury." *Argus Real Estate, Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 609 (Colo. 2005).  A dismissal with prejudice—including a voluntary dismissal—is considered an adjudication on the merits and therefore claim preclusive.  *See Groundwater Appropriators of S. Platte River Basin, Inc. v. City of Boulder*, 73 P.3d 22, 25–26 (Colo. 2003).

The parties do not dispute that the Lays' Colorado Springs lawsuit was dismissed with prejudice.  (Defendants' Facts ¶ 23; Plaintiffs' Response ¶ 23.)  That dismissal precludes the Lays from later raising "claims that might have been decided if the claims are tied by the same injury." *Argus*, 109 P.3d at 609.  It is beyond question that a "claim[] for bad faith and statutory violations based on conduct before February 4, 2010" (ECF No. 4 at 6) would be "tied by the same injury" and therefore precluded.

It is not clear whether the Lays disagree with this conclusion.  The Lays' response to American Family's summary judgment motion does not discuss the question because the Lays misperceived the claim preclusion argument.  Specifically, the Lays understood American Family to be making a claim preclusion attack on any claims arising out of Scherling's September 2010 letter.  (*See* ECF No. 5 at 8–12.)  American Family made clear, however, that its claim preclusion argument applies only to "[a]ny claims for bad faith and statutory violations based on conduct before February 4, 2010."  (ECF No. 4 at 6.)  In any event, the Lays do not directly address their pre-February 4, 2010 theories, if any.

Nonetheless, at one point in their response brief, the Lays could be understood as arguing that their settlement agreement with American Family preserved all "extra-contractual claims," such as bad faith, without regard for when those claims arose.

8

(ECF No. 5 at 10.)  To the extent this is meant as an argument against claim preclusion of any pre-February 4, 2010 claim, the Court rejects it.

"Construction of the provisions of a settlement agreement, like any other question of contract construction, is a question of law." *Carland v. Metro. Life Ins. Co.*, 935 F.2d 1114, 1120 (10th Cir. 1991); *see also Ringquist v. Wall Custom Homes, LLC*, 176 P.3d 846, 849 (Colo. App. 2007) ("The interpretation of a settlement agreement, like any contract, is a question of law . . . .").  As a matter of law, the settlement agreement is not an agreement by American Family to waive any preclusion defenses to pre-February 4, 2010 claims.  As relevant here, the settlement agreement states only that it

> does not resolve, release or waive and specifically excludes any other claims Robert Lays and Carla Lays have or may have against American Family, including but not limited to any claim for breach of the duty of good faith and fair dealing, violation of C.R.S. § 10-3-1115, abuse of process or punitive damages, related to their insurance claim arising out of the February 6, 2008 automobile accident.

(ECF No. 4-6 at 1.)  This is an acknowledgment by the parties that certain claims are not within the settlement; it is not an agreement to allow otherwise barred claims to be revived.

Accordingly, to the extent the Lays continue to assert claims of any variety based on American Family's alleged conduct before February 4, 2010, the Court agrees with American Family that claim preclusion bars the Lays from asserting those claims. Summary judgment will be granted to American Family on this point.

**B.    Statute of Limitations**

American Family next argues that any statutory bad faith claim (Colo. Rev. Stat.

9

§ 10-3-1115) arising before February 4, 2010 is barred by what American Family claims

to be a one-year statute of limitations.  (*See* ECF No. 4 at 9–12.)  Given the foregoing

resolution of American Family's claim preclusion defense, the Court need not and does

not resolve this question.

**C.      Whether Scherling's September 2010 Letter Creates a Material Factual Dispute**

The Lays' remaining common law and statutory bad faith claims both rest on the

following passage from Scherling's September 2010 letter:

> I note that no mediation has been set in this case.  Please
> be advised that we are proceeding with IMEs of your clients.
> That office will be in touch with your office shortly.  Of
> course, the money we spend on IMEs will not be available
> as settlement proceeds, if any, for your clients.

(ECF No. 4-5 at 1.)  Having based their claim on this letter (which post-dates the filing

of their Colorado Springs lawsuit), the Lays have raised the question of whether

insurance bad faith liability can arise from what the parties call "post-litigation conduct,"

meaning an insurance company's attorney's handling of the dispute after an insured

has filed suit.  (ECF No. 4 at 14; ECF No. 5 at 9.)

American Family acknowledges that post-litigation conduct can, in some

circumstances, create bad faith liability under Colorado law.  (ECF No. 4 at 13–14.)

Nonetheless, the Court agrees with American Family that this is not one of those

circumstances.

Three years ago, this Court addressed a similar question with respect to the

Lays' abuse of process claim.  The Court then concluded that it "will not allow an abuse

of process claim to proceed past summary judgment when based only on what can best

be described as apparent posturing during negotiations in the litigation process."
*Seabron v. Am. Family Mut. Ins. Co.*, 2012 WL 1520156, at *5 (D. Colo. Apr. 30, 2012).
The Court finds this analysis equally applicable to the Lays' bad faith claims.
Scherling's September 2010 letter is in every way a typical lawyer-to-lawyer
communication when parties are positioning for a potential settlement.  Scherling noted
that mediation did not appear to be going forward, so he announced his intention to
take the next step in the discovery process, *i.e.*, to procure IMEs—the implication being
that the IMEs could have been avoided had mediation gone forward.  Scherling then
stated that the expense of this additional discovery "will not be available as settlement
proceeds," which is nothing more than a typical lawyer-to-lawyer threat (or bluff) to
encourage the other side to settle before such expenses are incurred.

The Lays have nonetheless made the proverbial mountain out of a molehill here,
repeatedly characterizing Scherling's letter as a threat to reduce the Lays' UM
"benefits."  (ECF No. 2 ¶ 34; ECF No. 5-1 ¶ 5.)  That is simply not what Scherling said.
He specifically said "settlement proceeds," not "benefits."  No reasonable jury could
interpret this as anything other than typical settlement posturing.

Moreover, even if the Lays could prove that Scherling intended to reduce the
Lays' "benefits" dollar-for-dollar based on the cost of the IMEs, the Lays have cited no
cases in which such an intent could form the basis for a bad faith claim.  In a lawsuit
such as the Lays' suit in Colorado Springs, nearly every settlement will be, in effect, a
payment of "benefits" to the insured—meaning that any successful negotiating position
advanced by the insurer's attorney will reduce the "benefits" the insured will ultimately
receive.  Understood in that light, the Lays are really asking this Court to hold that an

insurer commits bad faith when its settlement negotiations are influenced by the expenses it has already incurred in the lawsuit.  Without solid authority supporting such a far-reaching rule (which the Lays have failed to provide), the Court will not so hold.

In sum, Scherling's September 2010 letter does not raise a genuine dispute of material fact regarding whether American Family acted in bad faith.  American Family is therefore entitled to summary judgment on the Lays' common law and statutory bad faith claims.

## D.      Damages

American Family further argues that the Lays have not proven any damages flowing from the bad faith allegedly exhibited in the September 2010 letter.  (ECF No. 4 at 15.)  Given the foregoing disposition, that question is moot and the Court does not reach it.

## E.      The Lays' CCPA Claim

The Lays originally asserted four causes of action: (1) statutory bad faith, (2) common law bad faith, (3) violation of the Colorado Consumer Protection Act (CCPA), and (4) abuse of process.  (ECF No. 2 ¶¶ 110–36.)  This order disposes of the statutory and common law bad faith claims.  As noted above, this Court previously granted summary judgment for American Family on the abuse of process claim. However, in the same order granting summary judgment on abuse of process, this Court also denied summary judgment on the CCPA claim, except "to the extent Plaintiffs are seeking to pursue a CCPA claim based on Defendants' alleged failure to disclose to their insureds, during the claims handling and resolution process, the

12

inner-workings of that internal claims handling and resolution process." *Seabron*, 2012 WL 1520156, at *8. Thus, the CCPA claim remains for trial in some form.

Given that the currently operative complaint still assumes that this case would proceed as a class action, it is not clear which CCPA-related allegations apply to the Lays' case specifically, nor what form of CCPA violation the Lays intend to try. The Final Pretrial Order is similarly ambiguous. (*See* ECF No. 8.) The Court will therefore order the parties to contact Judge Tafoya to establish a schedule for a supplemental Final Pretrial Conference and Amended Final Pretrial Order reflecting the status of this case in light of the Court's rulings above.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.   Defendants' Motion for Summary Judgment (ECF No. 4) is GRANTED;

2.   The parties are ORDERED to contact the chambers of Magistrate Judge Kathleen M. Tafoya to establish a schedule for holding a supplemental Final Pretrial Conference and entering an Amended Final Pretrial Order reflecting the state of the case in light of this Order. In particular, the Amended Final Pretrial Order shall specify the allegations for violation of the Colorado Consumer Protection Act specific to the Lays' claim, if any. The parties shall also discuss, and the Amended Final Pretrial Order shall address, the number of days necessary to try this case in light of this Order; and

3.   This matter REMAINS SET for a four-day jury trial beginning on August 31, 2015, with a Final Trial Preparation Conference at 2:00 p.m. on August 14, 2015 in Courtroom A801.

13

Dated this 2nd day of April, 2015.

BY THE COURT:

William J. Martinez
United States District Judge